The next case this morning is 522-0309 Lawrence v. Ordner et al. Arguing for the appellant is Kent Heller. Arguing for the appellee is Ted Graham Jr. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. If Mr. Heller, if you're prepared to start, you may do so. Are you able to hear me Mr. Heller? Are you on mute? I'm not on mute now. Mr. Heller, can you hear us? Mr. Graham, can you hear us? I can. I'm sorry, I had a technical issue. Okay, all right, no problem. Whenever you're ready, you may begin. Thank you, Your Honor. May it please the court. Counsel, this case is a fairly straightforward adverse possession case. If you type in Lexis adverse possession fence, you'll get about 7,900 cases and they all hold the same thing. And that is the fence itself is possession of the property. The trial court directed a verdict finding that the plaintiff had failed to establish where the property line was. That's just not true in this case. There were three surveys admitted into evidence and every one of them has the fence in exactly the same place. There is no question about where the fence was. The issue that Mr. Graham raised to the trial court was that the plaintiff didn't prove that she farmed right up to the edge of the fence or that her cattle grazed alongside of the fence. None of the cases hold that that is required. Matter of fact, the cases say that the fence itself is the claim of possession. The exclusion of others from the property is the claim of possession. And if it puts the community on notice of your interest in the property, which the fence itself does, the cases hold that the plaintiff is entitled to adverse possession. In this case, there isn't any question about where the fence was. The trial court simply made a mistake and applied the law that says that you have to establish the borderline clearly with cases where the claim was something like, well, there was a dividing line and it was somewhere between the two telephone poles. That isn't the case here. We have a clearly established fence, a fence that had been there for almost 100 years, a fence which the defendant knew of. He hunted along that fence as a child when his there can't be any question about where it was. And both parties testified, even the defendant, that he knew where the fence was. He was the one that removed it. Imagine, if you will, a driveway combine and turns out that it's on the neighbor's property. But for over 100 years, your family had gated that driveway and used it for access to your field. No one else was down the two ruts of the driveway where the tires would go. Now, because you didn't drive all the way to the edge of the driveway, does that mean you didn't possess it and you're not entitled to a claim of adverse possession? In several of the cases, the ground that were cited, the ground is simply open and used as pasture land. And there's no testimony that it was ever farmed even close to the fence or that a cattle chewed the weeds out from under the fence. But the fence itself was possession and was sufficient in some cases to reverse a verdict in favor of the remover of the fence and in others to support summary judgment. There is no issue in this case that the plaintiff proved where the fence was. And there's no question about the other elements. The trial court simply made a mistake in terms of confusing the requirement that you identify specifically where the fence was with a requirement that you specifically identify what portion of the property you used. The possession, the use, is the fence itself. And that was clearly established by the evidence. There can't be any question that the plaintiff established that. The surveys demonstrated all of the evidence demonstrated. And the trial court simply erred in suggesting that the plaintiff had to prove that she touched every inch of the property inside the fence. And if she didn't prove that, she was not entitled to the judgment. Based upon that, your honors, we're asking that this court reverse the trial court and remand this proceeding. I'd be happy to answer any other questions. Justice McCaney, Justice Welch, any questions? No questions. No questions. All right. Thank you, Mr. Heller. You'll have time and reply. Thank you. Mr. Graham, whenever you're ready. Thank you, your honor. May it please the court and counsel Heller. There is no dispute in this case about where the property line was. And there's also no dispute about in this case about where the fence was. Neither of those are issues. The plaintiff in this case may have alleged the ownership of the property by a claim of adverse possession or complaint. But the plaintiff's true claim in this litigation is not that she ever adversely possessed anything. It is instead that she owns the disputed track by virtue of an agreement between the party's predecessors and interests to divide the property contrary to the meets and bounds description in their deeds at a boundary fence set in place many years before and that Mr. Ortner has encroached on her property and that ownership by removing the boundary fence. As far as what counsel Heller indicates, as far as knowledge of the location of the fence is concerned, we all know where the fence is concerned. It's identified on the surveys. What we don't know about the fence because the plaintiff never put on any of that evidence was who erected it and when did they erect it and why did they put it where they put it. And that evidence is probably long gone. The fact of the matter is though that their claim instead is based on some agreement that the really it was Ms. Lawrence's predecessors and interest came to to divide property or the use of the property at that location. And that agreement might have been enforceable as a license or another temporary easement or some other form of agreement between the parties that made the agreement. But that agreement can never evolve into a right of adverse possession. Adverse possession to the contrary must be subject to the five elements of adverse possession that we all talk about in all of the adverse possession cases. It must be continuous, hostile, adverse, actual, open, notorious, and exclusive under claim of right inconsistent with that of the true owner for the entire statutory period. Those considerations lead us to a couple of things that are important and dispositive in this matter. The first and the one that the trial court did not choose in her resolution of the matter is that because the plaintiff's claim was founded on an agreement between the party's predecessors and interest, the statutory term for adverse possession cannot be deemed to have commenced until an actual hostility existed between the parties. And no actual hostility existed between the parties or their predecessors in interest at any time prior to 2013 when Mr. Ordner removed the boundary fence and Ms. Lawrence objected. And on that basis, the limitation period didn't even start to run until 2013 and has certainly not expired yet. The other consideration that the trial court did choose in her resolution of the plaintiff never asserted any evidence of her possession and use of the disputed 35,000th of an acre strip. Now, the fact that the parties are able to identify those boundaries of the plaintiff's claim as defined and we've defined them in our brief does not suffice that requirement. It just tells you that's what their claim is. Instead, the plaintiff is required to show that she actually used and occupied some or all of that disputed area. And she has to put on some evidence, at least in respect to this case, she had to have put on some evidence before the court of that use and occupation of that 35,000th of an acre. The best that can be said of the evidence that she presented was that she picked some low-hanging fruit from trees along the fence row at various times in the past and that she and her tenant farmer cultivated an area between three to somewhere a distance of three to five feet adjacent to the existing fence. Now, I do recall that our evidence, it wasn't our evidence, but our presentation at the trial was that the fence is hanging on the south side of the fence post and that would indicate to the people who were there at the time and certainly indicated to my client that it was the people on the north side that inserted, that installed the fence to keep people on the south side out. Now, it's not uncommon for somebody to put a fence on the property line. It's also not uncommon for them to put it away from the property line. My next door neighbors have installed a fence about 30 inches away from the property line that drives me nuts because I got a 42-inch tractor and somehow or another one of us is driving on the other's property when we're cutting up grass. But that's precisely what occurred here. They haven't presented any, the plaintiff didn't put on any evidence to identify the fact that the fence within it any particular time under any circumstances was installed by anybody and was intended to act in any particular fashion, only that it existed. And the trial court determined from the evidence that the plaintiff presented that the picking of fruit did not identify a hostile, adverse, open, notorious, and exclusive claim for the entire statutory period. And the trial court also determined that her tenant farmer, that she claiming that her tenant farmer farmed within three to five feet of the fence, given the photography that she provided that evidenced essentially that she never encroached over the common boundary line, the meets and bounds line, didn't adequately define the area that Ms. Lawrence claimed by adverse possession. There was effectively no evidence presented by Ms. Lawrence in this case that identified her use and possession, adverse or otherwise, of any part of that 35,000th of an acre. Those findings are certainly not contrary to the manifest way to the evidence and I think they're this case deserves to be affirmed on appeal. Thank you for your time. So I have a couple questions. One in relation to Mr. Heller's argument, isn't it commonly held that a fence prohibits someone else from coming onto their property? Whether they use that property up to the very inch that the, you know, the few inches that fence posts are driven into the ground, it still keeps people appraised of the fact, apprised of the fact that you can't come onto my property, I put a fence here or someone put a fence here. So how is it required, where is the requirement? I haven't found the requirement, if you will, that says, you know, this person needs to utilize every square inch of the property that has been used. You can't, you know, cattle roam where they roam. If they don't want to go to that fence line and eat that grass for whatever reason, it doesn't mean that they don't possess that part of the pasture. Well, you've asked essentially two questions there. The first one is, is there any authority that indicates that the fence line is, that a fence line is commonly found in our law to in any circumstance designates the true boundary between two properties? I'm not suggesting that it would designate a true boundary, I'm suggesting that it delineates where someone makes a claim. Sure, it does. And I can give you a circumstance here that might indicate that, that would favor the plaintiff in this case, if the fence was actually on the north side of the post and the posts were at that location, that would indicate, that would be an indication, I think, of the fact that the, that the owner on the south was claiming ownership of the land all the way up to the location of the fence. That's not the case here. The case here is that the fence is on the south side of the post. So the plaintiff's side of the posts. On the, what the claimant is, or what the plaintiff is claiming is theirs, it was on that side of the post? It's on that side of the post. It indicates that the people who put the fence in were the people that lived on the north side, or were occupying the north side, because I think it was all farm ground at the time that the fence was actually installed. But it doesn't indicate an ownership, an adverse ownership by the people on the south side, it just indicates use by the people on the north side. The common boundary was established by a meets and bounds description in both of the deeds, in the plaintiff's deed and in Mr. Ordner's deed. And the actual use of the property on the south side of that fence, to that three to five feet, three and a half feet at one end and a little over five feet at the other end, 330 feet long. The actual use of that is what makes a difference here. And what we find when we talk about the actual use of that particular piece of property is that the owner on the south side never encroached over the quarter section line or the common boundary between the two properties. So there wasn't ever any evidence presented in this case that there was any use by the people on the south, Ms. Lawrence and her predecessors, of that disputed area. I mean, when you say there was never any, there was no evidence, she did testify that she picked hickory nuts and bittersweets from the, directly on the fence line, the tree overhanging the fence line. And I think there was some testimony that at one point there was pasture land. So of course we didn't have, you know, game cameras and things of that nature, maybe to catch the cow standing at the edge of the fence, but she was preventing anyone else. Well, the fence prevented anyone else from coming onto the south side of the fence to use that property. And so she had exclusive right of it at that point, wouldn't you say? No, I wouldn't. I didn't think you would, but I thought I'd give you an opportunity. Just like I have to mow that 30 inches on the other side of my neighbor's property. I don't, I'm not claiming an ownership interest in that and can't claim an ownership interest in that. The fact that he put a fence there doesn't tell us anything. Now, if I put a fence there, 30 inches over onto his property, and then continue to use it and maintain it for 20 years. Sure. I think, I think that I'm entitled to a judgment of adverse possession because I am actually making that claim. The fact that he put the fence there, it doesn't make any difference at all. He can, if he can fit his mower in between that fence and my property line, he's welcome to drive through there anytime he wants. Frankly, I'm not a jerk and he can drive his mower anywhere he wants, irrespective of the property line. But all that, all that does is create a license or a temporary easement or an easement by prescription or necessity. It doesn't provide, it doesn't, it doesn't establish any ownership interest in that particular strip of land. And that's exactly what happened here. She, it may have been that cows pastured all the way up to the fence at some time in the past, but there isn't any evidence of that. None of that's presented in this case. The only evidence that's presented in this case is that she went over and picked fruit along that property line, along the fence, which is not evidence of adverse possession. I don't think we're ever going to find a case that says that picking fruit along a property line or along a boundary fence, irrespective of the location of the boundary line is evidence of adverse possession. So if there is some other activity that she's put that piece of property to over the period of time that she's, over the 20 years that she's claiming this ownership for, then that's what's going to identify the area that can be claimed by adverse possession. And she didn't put any use to it. The best testimony that we have is that she farmed within three to five feet of the fence, and the property line is three to five feet of the fence. The pictures that she submitted that identified where she farmed showed that she never farmed over the common boundary, the meets and bounds line. So I don't think any of that establishes any basis for the claim of adverse possession. The other issue that I mentioned though is also dispositive of the same issue, the same claim, and that is that her claim is based on an agreement that existed between the parties who were her predecessors in interest. An agreement between the parties can never ripen into adverse possession, ever. And therefore... Let me clarify, or have you clarify for me, I should say. As far as an you're not suggesting that these actual plaintiffs and defendants are responding here, they did not have that agreement. This is people in the past predecessors of interest that may have had this agreement, correct? Yeah. How long does that agreement last? Is it between the people who made it, or does it bind all of their heirs after that? It does not bind their heirs after that. So then... It's between the people who made it. And at what point are those people, I guess in this case, what point did those people who made that agreement, when did they pass away? When did that agreement pass away? The agreement lasted until they conveyed the property by meets and bounds to their successors in interest who are Ms. Lawrence on the one side and eventually Mr. Ordner on the other side. Okay. Ms. Lawrence has a deed that conveys the property to her by meets and bounds description to the quarter section lines. And when did that conveyance take place? More than 20 years ago or less? I think that conveyance... I don't remember right off the top of my head. I think it was probably... I suspect that that agreement that you're referring to could never ripen into adverse possession, died more than 20 years ago and the possession continued in that fashion. Doesn't she have a right to adverse possession? No. Because her claim is based on her ownership of the land. And there wasn't any dispute about her ownership of the land. Even then, or all the way up until 2013, there was difference of opinion about who owned what. But there was never a dispute about her ownership of the land until that dispute became hostile. And it became hostile when Mr. Ordner took the fence out. And then she made her claim that she actually owned this land all the way up to the fence row because of the fact that her predecessors in interest had agreed that that was the case. Okay. All right. Thank you, Justice McKean. Justice Welch, do you have any questions? No questions. Mr. Graham, thank you for your argument and your brief. I found it very enlightening. I thought it was a good job. Thank you. Mr. Heller, you have time to reply. Thank you, Your Honor. Of course, Mr. Graham wants to change the nature of the plaintiff's case and allege it's based on an agreement that neither of these parties made. I believe the deed to Mrs. Morris was recorded in the 60s, some 60 years ago. And the people that made this agreement probably made it around the turn of the century, 1910 or something like that. There is no requirement in any of the cases that the plaintiff proved when the fence was made, who put the fence up, just where it is. In the case of Strawbridge v. Schaefer, it is clear that the possession of the property, the exclusion of others from the property is possession of the property, of all of it. There's no case in Illinois that I found that says that there's a difference if the barbed wire or the woven wire is on one side of the fence or the other. Counsel's merely speculating as to which side of the fence post is determinative of the claim. Mrs. Lawrence testified specifically that she never went across the fence the other side, and she didn't let other people come across the fence into her property. So, the claim, the case is that the fence itself, in Strawbridge, the court said that the hostility element does not imply actual ill will, but only the assertion of ownership, and that the fence does that. It puts the community on notice that you're claiming the right property up to the fence line, and that's what we have here. The adverse possession is kind of a funny creature in that it's really a statute of limitations. It says that no person can try and evict another from your property if you've adversely possessed that property for more than 20 years, and that's the case here. Mr. Morganer is trying to take his property, and he hadn't made any claim to the property on the plaintiff's side of the fence, nor his predecessors for 100 years, and under those circumstances, adverse possession does apply. The plaintiff has shown where the fence is, and under all the case law, is entitled to prevail on her claim of adverse possession. So, let me ask one question with regard to Mr. Graham's argument. He spent a little bit of time arguing about the fact that there was no hostility in the adverse possession until his client removed the fence. How do you define hostility and what is required under the adverse possession laws with regard to hostility in claiming that the property is won once? I'm reading directly from the opinion in Schaefer. The hostility element does not imply actual ill will, but only the assertion of ownership incompatible with that of the true owner and all others, citing Joyner v. Jansen, an Illinois Supreme Court case. The fact that we possess the property is hostile and is adverse to whoever claimed property on the other side of the fence. The fence itself is the claim that in all of the cases that I've read. As a matter of fact, the landmark case says, in terms of defining where the line is, this land doesn't have to be enclosed by a fence, suggesting that the fence itself is the hallmark of the claim for adverse possession. Right. Okay. Do you have anything further? No, Your Honor. All right. Justice McKamey, Justice Welch? No questions. Okay. Mr. Heller, Mr. Graham, thank you both. Mr. Heller, again, I mentioned to Mr. Graham that I enjoyed the briefs and the argument. Same goes for yours. We will take this matter under consideration and issue our ruling in due course.